2011-11-14-38 Mr. Winters. Thank you. Good morning, and may it please the Court.  I'm going to start with a brief introduction of an admittedly infringing generic without any consideration of the patentee's prime official validity evidence. Insofar as we've been able to determine, that's the first time in American jurisprudence that's happened. There are... You mean this is really a historic event that we're reviewing? From a factual perspective, it is, Your Honor. This is, insofar as we're able to tell from the cases, that has never happened before. There are a number of issues that we've raised in the briefs that warrant this Court's attention. I've proposed to focus on three today. I'd like to begin with the effect of the Court's failure to consider at all the prime official validity evidence and how that nests with this Court's jurisprudence. Well, can I just ask you for clarification? When you're talking about evidence, isn't it correct that the only new evidence presented when it was sent back was this expert report by Dr. Sulak? Sulak. Am I right about that? No. For example, Dr. Sulak discusses the Sullivan reference, which talks about how unpredictable the art is. And she nests that art with disclosures in, for example, the Kovacs article, which says that this art is so unpredictable that when one puts the same dosage of estrogen into different women, the blood serum levels are substantially different and that the art finds that to be inexplicable. So even the same dosages in different women produce results that the art, and this is percipient testimony. This isn't just Dr. Sulak. It's percipient testimony, but she weaves that with the other art. So she discusses in her report not just Sullivan, but a substantial number of other references not before this Court before. And I would submit more trenchantly, not addressed at all in the prior opinion. So the answer to my question is, yes, the only new evidence was the report submitted by Dr. Sulak. I'm sorry. So the report and the references that it discusses, yes. I then propose to move to the legal effect of the district court's failure to consider an issue not raised in the prior opinion, which is whether or not the ordinary artisan would have started with COVAX at all in light of the art. And then I propose to finish with, even assuming COVAX is a starting point, what is the legal effect of the district court's failure to consider the considerable evidence that the ordinary artisan would not have selected as the second interval, 10 micrograms of unopposed estrogen for each and every of the seven days. So if I can, I'd like to begin with first the district court's failure to consider Dr. Sulak's And let's just reset and remind how we got here. In the prior, as the court knows, this case has been before the court before. In that prior opinion, the court had before it all of Watson's experts' testimony and effectively none of Dermott's. And on summary judgment, viewed through the lens, as one does, of summary judgment, this the inferences from it. And based on the expert testimony that Watson had submitted, Watson's made a prima facie case. And it reversed and sent it back down to the district court. The error then happened at the district court. What the district court did, and we don't need to guess because the district court said this explicitly in its order. The district court took that prima facie showing and said it didn't need to look at any, any of Dermott's prima facie validity evidence. And so it disregarded all of it. So this is not a case where the district court looked at our evidence and made findings on the prima facie evidence with which we disagree. This is a different case. This is a case where the district court just didn't consider it at all and said so explicitly. We don't have to guess about that. That result and methodology is squarely foreclosed by this court's opinion in Titan-Tyre. In Titan-Tyre, this court specifically joined the issue with respect to the substantial question in preliminary injunction this court looks at in a preliminary injunction test. Is it proper just to look at one side's evidence or must one consider all of the evidence? And this court said without qualification or ambiguity that the question of whether a substantial question has been presented can be reached if and only if all of the evidence is assessed. If the district court considered skepticism, commercial success, copying, long felt but unsolved need, presumably it had Dermott's argument and evidence. With respect to secondary considerations, you're absolutely right, Your Honor. Well, that's what you need to rebut the prima facie case. Ah. So the, thank you, I now understand the thrust of your first question. As Kumar instructs, and we've cited this in the brief, there are other cases, for example, Strataflex, which is not cited in the brief as such a case. The prima facie case is just a procedural device. Once there is other evidence presented with respect to the prima facie validity case, that the prima facie presumption or finding, as it were, dissolves. And the issue of whether or not there's a prima facie case is looked at upon all of the evidence. So for example, in the prior opinion, this court did not consider, because the issue wasn't joined, the question of whether or not the ordinary arson would have started with Kovacs at all. There's new information for this court from Watson on that very question in this appeal. As we've discussed in our briefs, Dr. Sulak lays out a number of reasons why the ordinary arson would not have started with Kovacs. So for example, the fact that the dominant regimen, this is still true today, was not an 84-day first interval, but a 21-day first interval. This is Watson's response. This is at page 39 of their brief to that evidence, if I can, I'd like to read this. Moreover, Dermot argues that when the 969 patent application, that's Dermot's patent, was filed, the FDA, despite 40 years of oral contraceptive marketing, had never approved any extended cycle regimen, either with or without the traditional hormone-free interval. What is the effect of that fact not considered in the earlier opinion? These are Watson's words, not ours. This suggests that the state of the art was far from developed enough to support an objective expectation of the effect of unopposed estrogen, let alone different doses thereof, following an extended 84-day regimen. That is precisely one of the arguments that Dr. Sulak makes. This is again Watson's brief at page 39. So why wouldn't the ordinary artisan have started with Kovacs, besides the dominant flow of history? We can answer that question by looking at art that Watson invokes, and let's look at Sulak 1997, because that answers that question in part. Sulak reviewed three different prior studies. There were three studies using a 42-day first interval, one study using a 63-day first interval, and two studies using an 84-day first interval. So she didn't start with 84, in terms of what she reviewed. The dominant, if you look at the predominant number there, most artisans were starting with 42, not 84. Kovacs is not 42. She then studied a number of regimens, 37 patients on the 42-day first interval, which is consistent with the majority of those having started at 42, 14 patients on a 63-day, and only 16 on an 84. So most of the regimens that she actually studied weren't an 84-day regimen like Kovacs. Most were 42. If one then looks at the 749 patent, which is another piece of art that Watson principally evokes, that discloses and claims ranges, as this court previously found, for the first interval from 25 to 77, and including all of the days within that. I don't like to do math on the fly, but I think that's 52 different possible regimens there, 52 different lengths. And its examples, it lists six different examples. So it lists 25, 26, 35, 49, 77, as potential first interval lengths, but not 84. And as Dr. Sulek explained, when you consider that art, and the dominant historical paradigm, and her own studies in 1997, none of those point towards starting with an 84-day first interval. And as this court taught in, for example, Takeda Chemical, said it in our brief, when there are a number of potentials, as that's a lead compound case, as the starting point there, there were nine, here there are many more, there needs to be something that points the ordinary artisan towards the assumed starting point. None of that evidence has been considered here. This was not an issue that was even joined in the prior appeal. Now, are there pointers away from an 84-day regimen? There certainly are. Dr. Sulek discusses at length, and this is, for example, at JA 917 to 918, the art's substantial concerns about cancer, endometrial cancer in particular, from extended regimens, and the general trend across regimens away from increasing the estrogen load that patients are subjected to. Extended regimens do exactly that. In fact, Kovacs, one of the principal references on which Watson relies, talks explicitly about how the extended regimens that it studied exposed the patients to, I think it's 32 percent increased estrogen load. There's also unconsidered testimony from Sulek about how an ordinary artisan wouldn't have started with Kovacs for other reasons. So, for example, Kovacs had an unusually high dropout rate. Half of the women who undertook the regimen dropped out, excuse me, 70 percent dropped out. Half of those were for the substantial problem of breakthrough bleeding. If you compare that to Mercet, the Mercet study, and we presented this evidence to the district court below, there were more than 1,200 patients studied in the Mercet study. Only two dropped out for breakthrough bleeding. So when you look at that comparison, that's a strong indication, but the trenching point here is that it's an unconsidered consideration that the ordinary artisan would have been pointed away from Kovacs' starting point. There's also contemporaneous evidence that Kovacs would not have been regarded in the art as a success. If you look at Sulek 1997, so pre-litigation, you know, no accusation of bias possible. Sulek in 1997, in the article itself, describes Kovacs as a failure. It notes that many women remain concerned about the side effects of extended regimens. So her opinion now, like her opinion then, was that Kovacs, even within its four corners, had pointers away from it as being a regimen that should be followed. But let's assume that the ordinary artisan would have started there. Are there reasons that an ordinary artisan would not have chosen 10 micrograms of unopposed estrogen for each and every of the seven days? Mr. Winters, you want to save three minutes, which you have now reached. You can continue or save it as you wish. I'd like to save it, and thank you for the reminder, Your Honor. Mr. Jansen. Good morning, Your Honors, and may it please the Court. Mark Jansen for Watson Laboratories, defendant and appellee here. I do agree with Mr. Winters. This is procedurally a unique case, and I believe in the context of this procedurally unique case, the district court did not abuse his discretion in denying Duramed's motion for a temporary restraining order and preliminary injunction. But he didn't really, at least he didn't write about the SULAC declaration. Did he consider it? I, let me first of all say, I think that both parties have somewhat, maybe not been completely accurate in representing the extent to which the SULAC report had been in front of, was part of the record on the first appeal. Duramed actually filed the complete SULAC report with its motion for summary judgment that resulted in, as the Court knows, the district court granting summary judgment of non-obviousness. That was an appeal to this Court, and just a few pages of the SULAC report ended up being cited and made part of the joint appendix on appeal. However, it was in the record under the federal rules of appellate procedure. The SULAC report was in the record, and in fact, if you read through the SULAC report, and of course this Court can affirm on any basis whatsoever, I invite you to look through the SULAC report that was attached in its entirety in the present record. But it essentially, Duramed's arguments to this Court on the first appeal were essentially the SULAC report arguments. And they may not have cited to the report, but they certainly cited to the report in the district court on the first summary judgment motion. So did the court, the district court, I think got it right, actually, in its opinion, that we're now looking at when it said that the SULAC report was in front of this Court. That is, it was part of the record on appeal. So your explanation for what the district court did was that he didn't ignore the SULAC report, but he presumed it was part of the initial record, so it wasn't part of any kind of new argument with respect to rebutting the prime official case of obviousness? I don't know what was going on in the judge's mind other than what he said in his opinion, but I think that he was correct in saying, in his understanding, that it was part of the record on the first appeal. Now, I think the district court, obviously, you know, misunderstood the law of obviousness and the prior art when it first granted the motion for summary judgment in Duramed's favor. And this court, six months ago, you know, looked at all the prior art, and the only four pieces of prior art that anybody agrees is critical. In fact, Duramed had made this argument successfully to the district court the first time around. All the other prior art is cumulative. So this court, on its first decision, focused on four pieces of prior art. The COVEX decision, the 749 patent, and the two SULAC articles, 1997 and 2000. All the rest were considered cumulative. I think we can consider those cumulative. The court pointed out that the district court had made certain errors in the way it interpreted those articles and the way it applied the law of obviousness by looking at each reference individually, requiring that references show data or guarantees of success. And I think SULAC report is not, and the case law of this court has been pretty clear that expert opinions, and KSR says this as well, according to KSR, affirmed a grant of summary judgment, notwithstanding an expert report that drew certain conclusions, i.e. one of ordinary skill in the art, would not be motivated to combine these references. The Supreme Court said, basically, when you have two known techniques, and the question is whether there's motivation to combine those two techniques together, all you need to find is somewhere in the prior art suggestion or teaching to combine those two references. And I think this is where we get back to, again, this court's prior decision, which I think the district court was completely appropriate in following, given the fact that this court had considered and essentially rejected all of the arguments that are really being made here again today and were certainly made in the appellate briefs that have been submitted and were made to the district court on the PI motion by Duramed, which is, you know, COPEX teaches a way, 749 patent teaches a myriad of combinations and does not teach the specific reference, the argument that the SULAC 2000 article simply suggests the use of unopposed estrogen, but does not give adequate data to ensure that it will be successful. And this court, I think, with respect to the 749 patent, I think the 749 patent nails it on the head. The 749 patent expressly teaches the use of 10 micrograms of ethanol estradiol following a variety of extended combination contraceptives. And at the oral argument back in January, I used the analogy of, you know, adding intermittent windshield wipers to a car chassis. You know, you can add those intermittent windshield wipers to any car body you want. And I think this court in its interpretation of the 749 patent as specifically teaching 10 micrograms of unopposed estrogen that can be added to any extended regimen. These are all known oral contraceptive regimens. The COPEX regimen, which Duramed commercialized this season now, certainly was not a failure. Otherwise, why would Duramed have commercialized that particular regimen? That is one known, taught-in-the-art extended regimen. And the 749 patent teaches that you can take that and add 10 micrograms to it of unopposed estrogen to cure the symptoms that are suffered during the hormone-free interval, in particular headaches. So, I think that is the prima facie case. And I think this court in its prior decision found, I believe the district court was proper in acknowledging, this court found an extremely strong prima facie case, not a marginal one. So, I don't think we have to quibble about what is the standard for granting or not granting a preliminary injunction. I believe that... Did we expressly say there was a prima facie case of obviousness? You did not say that there was specifically a prima facie case of obviousness, but I think you strongly, you indicated that there was and that it looked as though on summary judgment there would be a very... The court on remand could very well conclude that this patent was obvious. So, I believe that you came as close as you could. The questions to me at oral argument were, you know, do you believe, counsel, that this patent is obvious as a matter of law? I said, I can't ask for that now because we didn't move for summary judgment. But I think in the context, especially of a preliminary injunction motion, the question is not whether there's some evidence that jury might have to rebut the strong prima facie case. The question is, have they shown a likelihood of success on the merits? I think given this panel's prior look at what the prior art undisputably teaches, and we haven't brought the summary judgment motion, we've been given leave by the court to file that on the 18th of November, but what are the factors of a... As the court suggested be done on remand, what are the factors of the facts that go into obviousness? It's the scope and content of the prior art. Well, that's really undisputed here. The four references have been acknowledged to be the critical references. What do they teach? This court has looked at those references. I think the district court would not think of, you know, saying something different than what this court has already indicated those references say. I guess your position is, even aside from what the district court said or didn't say about the SULAC declaration, just as a matter of preliminary injunction law, you're saying you should win this appeal. Because of the context in which it's been, the unique context procedurally where this court has looked at the prior art, has already given guidance to the district court, and the SULAC report... We're not adjudicating validity here. We're not adjudicating validity here. It's not a final... Exactly. It's not a final adjudication of validity. This is a preliminary look at the case. And it was done on a very rushed basis when it was submitted on the TRO at the TRO level. So we haven't gone to the full trial. And there's still a question of whether a trial is needed because of the fact that the court is now, in part because of the nature of the remand, has indicated that it does want to hear a summary judgment motion before it decides whether a trial is necessary in this case. The district court here did seem to make some statements that are not correct. For example, the court said on page five, the federal circuit made specific factual findings relating to the teachings of the relevant prior art. We don't make fact findings here. No, I understand that. I think with the... I believe... The court also said on page six, the court finds the federal circuit's holding that Wilson has established a prima facie case of obviousness is binding upon this court. As Judge Lurie pointed out, there really was not a holding to that effect. Is that correct? I believe. I believe what is undisputed here is that there are these critical pieces of prior art that are clearly prior art. They say on their face what they say. And just taking as an example, this court's statement about the 749 patent. You know, the 749 patent, however, expressly teaches the administration of seven days of 10 micrograms of ethanol essergyl during the traditional hormone-free period following a variety of extended cycle CLC regimens. I don't think it was improper for the district court below to take that, whether it's a factual finding or really just a recognition of undisputed fact as to what the art does show. I mean, this is no different than, for example, looking at summary judgment. On summary judgment, the court can agree that there are certain undisputed facts. The portion I just read on page six about the prima facie case of obviousness being binding on the court seemed to . . . seemed to foreclose any review by the district court of anything other than secondary considerations. That is the way the court apparently approached it. I think in part . . . So the question I have is, was that wrong or not? I don't believe, assuming that's what happened, and I don't believe it's entirely what happened because we did explain in our briefs to the district court, and if you read the transcript of the argument, we pointed out that these were really the arguments about Rosenberg, other art teaching away, Sulek. All those arguments had been made before this court and had been essentially, I think, I would say, and we did argue this, rejected by this court in its prior decision. Therefore, the court, we said, should not be, you know, misled by the same arguments being made again. Now . . . In other words, let me see if I understand what you're saying. In our court's initial opinion, we said in light of this procedural posture, Dermot did not have an opportunity to challenge Watson's prima facie case of obviousness or introduce any evidence of secondary considerations. So are you suggesting that in light of that statement, the district court appropriately looked for them? And they had an opportunity to come in and challenge a prima facie case of obviousness, which they failed to do because, as you say, Sulek was already . . . those arguments were already before the court, and so that's why the district court just didn't find anything in their favor? I think that the court did look at, obviously, secondary considerations, and I don't think there's any dispute that he weighed the evidence and found that the evidence of secondary considerations were not sufficient. On the prima facie case, in reading his opinion, it looks as though he just believed he should defer to and respect this court's decision on the strength of the prima facie case. His statement that he felt he was . . . I don't believe he was . . . Excuse me. We both can't talk at the same time. When a judge talks, that's a signal for you to stop talking. I apologize. So the question in my mind is whether the district court considered this Sulek declaration or not. Without this, there seems to be no other evidence in question here, and he had it before him, correct? He had it before him on the motion that was submitted for the TRO as well as on the original summary judgment motion. So the argument that the other side is making that he really didn't evaluate all of the factors relating to the prima facie case is not correct. He did not go . . . the judge did not look and evaluate the Sulek article explicit . . . Sulek report explicitly, and I can't say that he looked at it other than to recognize it was before the court previously, but he did not make findings. I cannot . . . I do not know what was going through the court's mind. I do . . . in looking at the Sulek report, I think you'll see that it . . . if you take a look at it yourself, you'll see that it addresses the same . . . makes the same arguments that were made to this court on the first appeal. Can I ask you a question about that? Would you look at A145, which is our opinion, where we say on the record before us there appears to be no genuine issue of material fact? There we reference the teachings of Kovacs, the 749, and the Sulek articles. Is that . . . does that . . . our reference to the Sulek articles include the declaration that we've been discussing here this morning? No, it does not. Okay, that's something different. Yeah, Dr. Sulek had authored the two articles, which are prior art, and then she'd written . . . she was then retained as an expert by Durham Med. Okay, so that reference does not include the new declaration that we've been . . . No, it does not. Okay, fine. I believe that . . . so to the extent that the court felt itself bound by this court's statement on prima facie obviousness, it's our point that that was not error in the context of a preliminary injunction motion. In this context, where the court had looked at the key pieces of prior art, acknowledged that they . . . and especially the 749 patent, expressly provides the motivation to combine the Kovacs extended regimen with 10 micrograms. That under KSR is adequate to grant summary judgment, in our view. And this court, and in KSR, the Weyers Master Lock case, which we cite, has identified the fact that adding expert opinions as to what the references say, or whether they would motivate one, does not create a genuine issue of material fact adequate to defeat summary judgment. I think here, where the standard is much lower, that is, it's a preliminary injunction motion. The question is whether there's a likelihood of success on the merit, not whether there's some evidence that Durham Med can come forward with. Mr. Jansen, your red light is on. Thank you. We have your position. Mr. Winters has a little of our time. Thank you very much. I beg your pardon, I did not hear how much time you said. Uh, 2.43. Thank you, I appreciate that. I want to be clear about the remedy we're seeking. We are not asking this court to reverse and instruct that an injunction be issued. That would be improper, for example, because this court doesn't make factual findings in the first instance. We are asking that the court vacate and instruct that in further proceedings in this case, whatever those be, the court has to consider the patentee's prima facie validity evidence. You were asked, um, Your Honor, I think you asked, or maybe it was you, Judge Lynn, did the district court look at Watson's, excuse me, Durham Med's validity evidence, prima facie, and you got the answer that the district court simply deferred to it. That is not correct, and we know that from the order. If you look, if I could invite the court's attention to A4 through 5, excuse me, A5 through 6, the court says there explicitly, the federal circuit specifically remanded the case to this court for the sole purpose of evaluating the remaining Graham factors, and those are the secondary considerations factors. Whether the district court was exposed, because it clearly was, to our validity evidence, it's clear from the record that the district court gave no consideration whatsoever, period, full stop to our prima facie validity evidence. That was wrong under Titan-Tyre. It was frankly wrong under this court's opinion reversing summary judgment, where this court specifically said, look at the prima facie evidence and the secondary considerations evidence. The district court did have the references, the same four references. There were no additional references presented. There was additional evidence. For example, we showed that the Merced study on a comparative basis, where only two out of more than 1,200 studied dropped out because of breakthrough bleeding, would have been a pointer for the ordinary artisan not to choose COVAX, where there was a 70% dropout rate overall, half of which were from breakthrough bleeding, for the ordinary artisan to choose Merced as a starting point. This additional evidence was not the select. It was not in SEWAC. This was additional recipient evidence from FDA approvals and argument based on that evidence. So not in the prior appeal at all. Was that evidence offered? I'm confused about that. It was offered to the district court through declarations authenticating the FDA approvals and an argument based on that. And the district court refused to admit it or accept it? No. The district court refused to consider it because it thought that was prima facie validity evidence. How do we know that it refused to consider it? Because at pages five to six, the court says, and then frankly, Your Honor, in response to the portion you read, the court says the remand was specifically for the sole purpose of evaluating the remaining RAM factors, so not any of the prima facie validity evidence. Do you have any final thought, Mr. Winters? If I may, and I realize I'm close to the end. In fact, I'm over. If I may make one more point. KSR contemplates that when there's a small and finite number of choices in the art, then one can make quick, easy assumptions about what the art taught and whether or not there would have been a motivation to combine. This court's case law since then makes clear that when there's a broad array of choices, that teaching from KSR doesn't apply, and that's the situation here. We have, even in the first interval alone, just on the interval, forget about the dosage, from 25 to 77. Thank you. Thank you, Mr. Winters. The case will be taken under adjustment. All rise.